IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

MARCUS LAVERN TURNER,          )
                               )
          Petitioner,          )
                               )
          v.                   )          1:11CV1107
                               )
SUSAN WHITE,                   )
                               )
          Respondent.[1]       )


## MEMORANDUM OPINION AND ORDER

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 1.)  A jury in the Superior Court of Guilford County acquitted Petitioner on a charge of robbery with a dangerous weapon but convicted him of felonious speeding to elude arrest. (Id., ¶¶ 1, 2, 4-6; see also Docket Entry 5-5 at 19-20 (verdicts).) Pursuant to the terms of a plea bargain, Petitioner than pled guilty to attaining habitual felon status (Docket Entry 5-5 at 23-26 (transcript of plea)), and the trial court sentenced Petitioner to 120 to 153 months' imprisonment (Docket Entry 2, ¶¶ 3, 5; see also Docket Entry 5-5 at 27-28 (judgment)).  The North Carolina Court of Appeals affirmed Petitioner's conviction, the North Carolina Supreme Court dismissed Petitioner's appeal, and the

<hr/>

[1] Consistent with Rule 2(a) of the Rules Governing Section 2254 Cases, the Petition in this case originally named Keith Whitener, then-Administrator of Alexander Correctional Institution, as Respondent. (Docket Entry 1 at 1.)  On September 8, 2014, the Division of Adult Correction of the North Carolina Department of Public Safety named Susan White as the Administrator of Alexander Correctional Institution.  See https://www.ncdps.gov (search for Susan White) (last performed Oct. 31, 2014).  By operation of Federal Rule of Civil Procedure 25(d) (applicable to this proceeding pursuant to Rule 12 of the Rules Governing Section 2254 Cases), Susan White thus now appears as Respondent.

United States Supreme Court denied certiorari. State v. Turner, No. COA09-933, 201 N.C. App. 727 (table), 689 S.E.2d 601 (table), 2010 WL 10552 (Jan. 5, 2010) (unpublished), appeal dismissed, 364 N.C. 247, 699 S.E.2d 922 (2010), cert. denied, ___ U.S. ___, 131 S. Ct. 1011 (2011).

Petitioner then instituted this action through counsel. (Docket Entry 1.) Respondent answered (Docket Entry 3), and moved for summary judgment (Docket Entry 4). Petitioner responded in opposition to Respondent's summary judgment motion. (Docket Entry 11.) The Parties consented to the disposition of this case by a United States Magistrate Judge. (Docket Entry 13.) For the reasons that follow, the Court will deny any habeas relief.

## I. PETITIONER'S CLAIM

The Petition identifies one ground for relief. (Docket Entry 1, ¶ 12.) Petitioner alleges that the trial court violated the Sixth Amendment to the United States Constitution when it instructed the jury "that they did not need to be unanimous as to which aggravators existed" to elevate the crime of speeding to elude arrest from a misdemeanor to a felony. (Id.)

## II. HABEAS STANDARDS

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Further, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his

remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to [this] [C]ourt in a habeas petition. The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see also 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").

When a petitioner has exhausted state remedies, this Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court on a question of law" or "confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite" to the United States Supreme Court. Williams v. Taylor, 529 U.S. 362, 406 (2000). A state court decision "involves an unreasonable application" of United States Supreme Court case

-3-

law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409–11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous").

## III. DISCUSSION

In his sole ground for relief, Petitioner asserts that the trial court violated his Sixth Amendment right to a jury trial by instructing the jury that "they did not need to be unanimous as to which two aggravators existed" to elevate the crime of fleeing to elude arrest from a misdemeanor to a felony. (Docket Entry 1, ¶ 12.) Petitioner maintains that "[t]he [United States] Supreme Court's Sixth Amendment line of cases, beginning with Apprendi v. New Jersey[, 530 U.S. 466 (2000),] requires that the jury unanimously agree on which two of three possible aggravators constitute elements of the substantive crime of Felonious Speeding to Elude." (Id.)[2] Petitioner relies on language in Justice Thomas' concurrence in Apprendi to underscore his point:

> Thus, if the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact . . . the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an

_____

[2] Petitioner's indictment charged that "two or more aggravating factors" existed during Petitioner's flight to elude arrest: "speeding in excess of 15 miles per hour over the legal speed limit," "operat[ing] the motor vehicle . . . in a careless and reckless manner," and "operat[ing] the motor vehicle while [Petitioner's] driver's license was in a state of revocation." (Docket Entry 5-5 at 9.) The trial judge's jury instructions did not require that the jury find which two of those three aggravators existed unanimously (see id. at 15-16), and thus the jury's verdict indicated only a finding of "guilty of felony flee to elude arrest" without specification of which two of three aggravators the jury found to exist (see id. at 20).

-4-

> aggravated form of petit larceny. The aggravating fact
> is an element of the aggravated crime.

(Docket Entry 11 at 2 (citing Apprendi, 530 U.S. at 501).) Based on this language, and the subsequent cases of Ring v. Arizona, 536 U.S. 584 (2002), and Blakely v. Washington, 542 U.S. 296 (2004), Petitioner argues that each of the two aggravating facts required to elevate speeding to elude arrest from a misdemeanor to a felony constituted an element of the aggravated crime. (Docket Entry 11 at 3.) As such, Petitioner contends that the Sixth Amendment required the jury to unanimously agree on each of the two aggravating factors and that the trial court erred by failing to instruct the jury that it must so unanimously agree. (Id. at 5.)

Respondent argues that the "constitutional flaw" found in Apprendi, i.e., a judge finding facts that enhanced the punishment beyond that authorized by the guilty plea, simply does not exist in the instant case. (Docket Entry 11 at 5.) Respondent emphasizes that here, the jury found all of the elements of felony speeding to elude arrest beyond a reasonable doubt. (Id. at 6.) Further, Respondent argues that the aggravating factors at issue in this case do not, individually, constitute elements of the felony requiring jury unanimity on each factor, but rather equate to "alternative ways of proving the crime of felonious speeding to elude arrest." (Id.) Respondent urges the Court to recognize language from the United States Supreme Court's decision in Richardson v. United States, 562 U.S. 813 (1999), that a "jury need not always decide unanimously which of several possible sets of

underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." Richardson, 562 U.S. at 817 (citing Schad v. Arizona, 501 U.S. 624, 631-32 (1991) (plurality opinion)). (Docket Entry 11 at 7.)

Petitioner raised this claim on direct appeal, and the North Carolina Court of Appeals denied the claim on the merits as follows:

> Under N.C. Gen. Stat. § 20-141.5(b) (2007), speeding to elude arrest is a misdemeanor unless the State proves the presence of at least two of the eight listed aggravating factors. [Petitioner] argues that [Apprendi] requires jurors to be unanimous about which two (or more) aggravating factors they have found because the factors serve to enhance his punishment. [Petitioner] concedes that this Court has already approved the jury instruction procedure used here in State v. Funchess, 141 N.C. App. 302, 540 S.E.2d 435 (2000) (holding that the trial court need not instruct the jury that its members must unanimously agree on which two factors were present), but asks that we overrule that decision. It is well-established that one panel of this Court cannot overrule the prior decision of another panel. In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989).
>
> [Petitioner] also argues that the aggravating factors listed in the statute are not merely alternative ways of establishing a single element, citing [Richardson]. However, our Court in Funchess addressed this issue in detail and determined that "the statutory [aggravating] factors are merely alternative ways of proving the crime of felonious speeding to elude arrest." 141 N.C. App. at 307, 540 S.E.2d at 438. Therefore, we find no error in [Petitioner's] sentence.

Turner, 2010 WL 10552, at *1-2. Due to this adjudication on the merits, the Court must apply Section 2254(d)'s deferential standard of review to the Court of Appeals' determination. For the reasons that follow, the Court concludes that the Court of Appeals, in

denying Petitioner's claim, did not rule contrary to or unreasonably apply clearly established United States Supreme Court law.

As an initial matter, the Court finds that <u>Apprendi</u> does not constitute "clearly established federal law" as to the specific proposition argued by Petitioner in this case. <u>Apprendi</u> involved a defendant who pled guilty to possession of a firearm for an unlawful purpose and possession of an antipersonnel bomb, which exposed him to a maximum sentence of 10 years' imprisonment. <u>Apprendi</u>, 530 U.S. at 468-70. Following the plea and at the prosecution's request, the trial judge held an evidentiary hearing and found, by a preponderance of the evidence, that the defendant had acted "with a purpose to intimidate . . . because of race," within the meaning of New Jersey's hate crime law. <u>Id.</u> at 470-71. The judge's racial bias finding increased the maximum penalty at issue from 10 years to 20 years' imprisonment. <u>Id.</u> at 469. The judge thereafter sentenced the defendant to 12 years in prison. <u>Id.</u> at 471. The United States Supreme Court reversed the defendant's convictions, holding that due process requires that any fact, other than a prior conviction, "that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to the jury, and proved beyond a reasonable doubt." <u>Id.</u> at 490. Respondent correctly argues that Petitioner's convictions do not implicate <u>Apprendi</u> (<u>see</u> Docket Entry 11 at 5-7), as a <u>jury</u> and not a judge found all of the facts necessary to elevate the crime of speeding to elude arrest from a misdemeanor to a felony,

i.e., two aggravating factors.  Similarly, the holdings of <u>Ring</u> and <u>Blakely</u> do not provide the Court with governing legal principles to apply to the facts in the instant case.  <u>See Ring</u>, 536 U.S. at 609 (holding that Arizona statute permitting <u>trial judge</u>, after the defendant's conviction by a jury of first-degree murder, to find aggravating factors necessary for imposition of the death penalty, violated Sixth Amendment right to a jury trial); <u>Blakely</u>, 542 U.S. at 304-05 (ruling that Washington's sentencing scheme, under which <u>trial judge</u> enhanced the defendant's sentence by finding defendant acted with "deliberate cruelty," violated Sixth Amendment).

In contrast to the <u>Apprendi</u> line of cases, the United States Supreme Court's earlier decisions in <u>Schad</u> and <u>Richardson</u> both address variations of the issue before the North Carolina Court of Appeals on Petitioner's direct appeal and confronting the Court today.  In <u>Schad</u>, the Supreme Court addressed the constitutionality of "a first-degree murder conviction under jury instructions that did not require agreement on whether the defendant was guilty of premeditated murder or felony murder."  <u>Schad</u>, 501 U.S. at 627. The Supreme Court began its analysis by recognizing that its "cases reflect a long-established rule of the criminal law that an indictment need not specify which overt act, among several named, was the means by which a crime was committed."  <u>Id.</u> at 631.  The Supreme Court then rejected the notion that "any statutory alternatives are <u>ipso facto</u> independent elements defining independent crimes under state law, and therefore subject to the axiomatic principle that the prosecution must prove independently

every element of the crime," noting that "legislatures frequently enumerate alternative means of committing a crime without intending to define separate elements or separate crimes." Id. at 636. In affirming the Arizona Supreme Court's decision which upheld Arizona's first-degree murder statute, the Schad plurality concluded that, "[i]f a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law." Id. The Supreme Court made clear that it would defer to a state's interpretation of its own statute, as long as the statute's construction found support in history or tradition and did not risk serious unfairness. Id. at 637-40.

Subsequent to Schad, the Supreme Court in Richardson revisited the issue of whether statutory alternatives constitute the means to commit a crime or amount to elements of the crime about which the jury must unanimously agree. The Richardson court first endorsed the holding in Schad, noting that a "jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." Richardson, 526 U.S. at 817. Then, interpreting a federal statute penalizing a "continuing criminal enterprise" ("CCE"), 21 U.S.C. § 848, the Supreme Court concluded that the statute's requirement of a "continuing series of [drug] violations" meant that a jury

would have to agree unanimously on each of the individual drug violations that make up the "series," i.e., that each violation was an element of the CCE crime, not merely a means to commit it. Id. at 824. Following the dictates of Schad to consider history and tradition, the Supreme Court noted that "[t]o hold that each 'violation' . . . amount[ed] to a separate element [wa]s consistent with a tradition of requiring juror unanimity where the issue [wa]s whether a defendant has engaged in conduct that violates the law." Id. at 818-19.

In light of these cases, the Court concludes that the North Carolina Court of Appeals's decision denying Petitioner's claim on appeal did not contradict or unreasonably apply either Schad or Richardson. Under Schad, the federal constitutional analysis must allow considerable deference to the determinations of the North Carolina legislature and appellate courts as to whether the aggravating factors at issue constitute alternative means of establishing felony fleeing to elude arrest or elements of the aggravated crime which a jury must find unanimously. Here, as the Court of Appeals recognized in denying Petitioner's appeal, Turner, 2010 WL 10552, at *1-2, that court has already ruled that the aggravating factors necessary to elevate misdemeanor fleeing to elude arrest to a felony do not constitute elements of a crime that require jury unanimity, State v. Funchess, 141 N.C. App. 302, 309, 540 S.E.2d 435, 439 (2000).

Funchess, in turn, based its reasoning, in large part, on an earlier North Carolina Supreme Court case, State v. Hartness, 326

N.C. 561, 391 S.E.2d 177 (1990), which found no unanimity violation where a jury convicted the defendant of taking indecent liberties with a child without specifying whether the defendant touched the child or induced the child to touch him. See Funchess, 141 N.C. App. at 308-09, 540 S.E.2d at 438-39. Moreover, numerous North Carolina appellate cases decided after Funchess have continued to hold that trial courts do not violate unanimity requirements or Richardson by instructing juries that they may convict defendants under various alternative means of committing the charged crime. See, e.g., State v. Galloway, 145 N.C. App. 555, 567-69, 551 S.E.2d 525, 533-35 (2001) (interpreting first-degree rape instructions under N.C. Gen. Stat. § 14-27.2 and finding no violation under Richardson); State v. Yearwood, 147 N.C. App. 662, 668-70, 556 S.E.2d 672, 676-78 (2001) (evaluating first-degree sexual offense and indecent liberties jury instructions and ruling Richardson inapposite); State v. Cleveland, No. COA02-155, 154 N.C. App. 742 (Table), 572 S.E.2d 874 (Table), 2002 WL 31818943, at *5 (Dec. 17, 2002) (unpublished) (analyzing instructions on first-degree sexual offense and concluding Richardson not violated).

Given these circumstances, the Court of Appeals did not contradict or unreasonably apply Schad or Richardson in ruling that "the statutory [aggravating] factors are merely alternative ways of proving the crime of felonious speeding to elude arrest." Turner, 2010 WL 10552, at *2 (citing Funchess, 141 N.C. App. at 307, 540 S.E.2d at 438).

Alternatively, even if the trial court's failure to instruct the jury that they must find the statutory aggravating factors unanimously constituted error under the Sixth Amendment's right to a jury trial, given the strength of the evidence supporting the existence of the aggravating factors at issue (see Docket Entry 5-10 at 170-81, 191-99, 232 (pursuing officers' testimony that Petitioner drove at estimated speeds of up to 80 to 85 miles per hour, with his headlights off and on the wrong side of the road, on city streets where the speed limit ranged from 35 to 45 miles per hour); Docket Entry 5-11 at 52-56 (state's closing argument summarizing evidence of revocation of Petitioner's driver's license and Petitioner's knowledge of same)), any such error did not have a "substantial and injurious effect" on the jury's verdict under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).[3]

## IV.  CONCLUSION

Petitioner's habeas claim fails as a matter of law.

**IT IS THEREFORE ORDERED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be granted, that the Petition (Docket Entry 1) be denied, and that Judgment be entered dismissing this action without issuance of a certificate of appealability.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

December 1, 2014

---

[3] Respondent raised this alternative ground based on Brecht in her brief supporting the instant summary judgment motion. (See Docket Entry 5 at 10-11.) Petitioner failed to address this argument in his response in opposition to summary judgment. (Docket Entry 11 at 1-6.)

-12-